IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

MICHAEL HALTOM,

      Plaintiff,                        No. 2:13-cv-0227-KJM-KJN

      v.

MICHAEL J. ASTRUE,
Commissioner of Social Security,

      Defendant.                      FINDINGS AND RECOMMENDATIONS

/

      Plaintiff seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying plaintiff's application for Disability Insurance Benefits ("DIB") under Title II of the Social Security Act ("Act").[1]  In his motion for summary judgment, plaintiff principally contends that the Commissioner erred by finding that plaintiff was not disabled from December 4, 2007, through the date of the final administrative decision.  (Dkt. No. 15.)  The Commissioner filed an opposition to plaintiff's motion and a cross-motion for summary judgment.  (Dkt. No. 16.)  For the reasons that follow, the court recommends that plaintiff's

---

[1] This action was originally filed on August 25, 2011, in the Fresno division of this district, and the parties' briefing in this matter was submitted on April 25, 2012.  (Dkt. Nos. 1, 15, 16.)  Approximately nine months later, on February 6, 2013, Magistrate Judge Sandra M. Snyder transferred the case to the Sacramento division of this district based on improper intra-district venue.  (Dkt. No. 23.)  The case was referred to the undersigned pursuant to E.D. Cal. L.R. 302(c)(15).

motion for summary judgment be granted in part, the Commissioner's cross-motion for summary judgment be denied, the case be remanded for further proceedings under sentence four of 42 U.S.C. § 405(g), and judgment be entered for plaintiff.

I.  BACKGROUND

Plaintiff was born on January 29, 1951, has at least a high school education, and previously worked as a trucking company manager.[2] (Administrative Transcript ("AT") 21, 39, 45-46, 108, 151.) On October 3, 2008, plaintiff applied for DIB, alleging that he was unable to work as of December 4, 2007, primarily due to heart problems, carpal tunnel syndrome in both wrists, and emotional stress. (AT 14, 45-46, 145.) Plaintiff later also complained of a right shoulder injury, low back pain, psoriasis, and depression. (AT 31-38.) On January 7, 2009, the Commissioner determined that plaintiff was not disabled. (AT 14, 45.) Upon plaintiff's request for reconsideration, the determination was affirmed on June 10, 2009. (AT 14, 46.) Thereafter, plaintiff requested a hearing before an administrative law judge ("ALJ"), which took place on June 8, 2010. (AT 14, 27.)

In a decision dated August 2, 2010, the ALJ determined that plaintiff had not been under a disability, as defined in the Act, from December 4, 2007, through the date of that decision. (AT 14-22.) The ALJ's decision became the final decision of the Commissioner when the Appeals Council denied plaintiff's request for review on June 24, 2011. (AT 1-6.) Thereafter, plaintiff filed this action in federal district court on August 25, 2011, to obtain judicial review of the Commissioner's final decision. (Dkt. No. 1.)

II.  ISSUES PRESENTED

Plaintiff has raised the following issues: (1) whether the ALJ failed to properly consider the impact of plaintiff's psoriasis; and (2) whether the ALJ erroneously determined that

---

[2] Because the parties are familiar with the factual background of this case, including plaintiff's medical history, the court does not exhaustively relate those facts in these findings and recommendations. The facts related to plaintiff's impairments and medical history will be addressed insofar as they are relevant to the issues presented by the parties' respective motions.

2

plaintiff could perform the reaching requirements of his past relevant work.

III.     LEGAL STANDARD

        The court reviews the Commissioner's decision to determine whether (1) it is based on proper legal standards pursuant to 42 U.S.C. § 405(g), and (2) substantial evidence in the record as a whole supports it. Tackett v. Apfel, 180 F.3d 1094, 1097 (9th Cir. 1999). Substantial evidence is more than a mere scintilla, but less than a preponderance. Connett v. Barnhart, 340 F.3d 871, 873 (9th Cir. 2003) (citation omitted). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007), quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005). "The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving ambiguities." Edlund v. Massanari, 253 F.3d 1152, 1156 (9th Cir. 2001) (citation omitted). "The court will uphold the ALJ's conclusion when the evidence is susceptible to more than one rational interpretation." Tommasetti v. Astrue, 533 F.3d 1035, 1038 (9th Cir. 2008).

IV.     DISCUSSION

      A.     Summary of the ALJ's Findings

        The ALJ evaluated plaintiff's entitlement to DIB pursuant to the Commissioner's standard five-step analytical framework.[3] As an initial matter, the ALJ found that plaintiff

---

[3] Disability Insurance Benefits are paid to disabled persons who have contributed to the Social Security program. 42 U.S.C. §§ 401 et seq. Supplemental Security Income is paid to disabled persons with low income. 42 U.S.C. §§ 1382 et seq. Both provisions define disability, in part, as an "inability to engage in any substantial gainful activity" due to "a medically determinable physical or mental impairment. . . ." 42 U.S.C. §§ 423(d)(1)(a) & 1382c(a)(3)(A). A parallel five-step sequential evaluation governs eligibility for benefits under both programs. See 20 C.F.R. §§ 404.1520, 404.1571-76, 416.920 & 416.971-76; Bowen v. Yuckert, 482 U.S. 137, 140-42, 107 S. Ct. 2287 (1987). The following summarizes the sequential evaluation:

> Step one: Is the claimant engaging in substantial gainful activity? If so, the claimant is found not disabled. If not, proceed to step two.
> Step two: Does the claimant have a "severe" impairment? If so, proceed to step three. If not, then a finding of not disabled is appropriate.

remained insured for purposes of DIB through December 31, 2012.  (AT 16.)  At the first step, the ALJ concluded that plaintiff had not engaged in substantial gainful activity since December 4, 2007, plaintiff's alleged disability onset date.  (Id.)  At step two, the ALJ determined that plaintiff had the following severe impairments: right shoulder tendinosis and torn rotator cuff, and osteoporosis.  (Id.)  However, at step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (AT 17.)

Before proceeding to step four, the ALJ assessed plaintiff's residual functional capacity ("RFC") as follows:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform less than the full range of medium work as defined in 20 CFR 404.1567(c).  Claimant is limited to occasional reaching overhead with his right upper extremity and frequent handling and fingering bilaterally.  He must further avoid concentrated exposure to humidity and wetness.

(AT 18.)

At step four, after obtaining vocational expert testimony, the ALJ found that plaintiff was capable of performing his past relevant work as a trucking company manager.  (AT 21.)  Accordingly, the ALJ concluded that plaintiff had not been under a disability, as defined in

---

> Step three:  Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App.1?  If so, the claimant is automatically determined disabled.  If not, proceed to step four.
> Step four:  Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.
> Step five:  Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.

Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

The claimant bears the burden of proof in the first four steps of the sequential evaluation process.  Bowen, 482 U.S. at 146 n.5, 107 S. Ct. at 2294 n.5.  The Commissioner bears the burden if the sequential evaluation process proceeds to step five.  Id.

the Act, from December 4, 2007, through the date of the ALJ's decision. (AT 22.)

    B.    Plaintiff's Substantive Challenges to the Commissioner's Determinations

        1.    Whether the ALJ failed to properly consider the impact of plaintiff's psoriasis

Plaintiff contends that the ALJ erred by failing to analyze the impact of plaintiff's psoriasis and neglecting to include resulting functional limitations in plaintiff's RFC. This argument lacks merit. Although the ALJ found that plaintiff's psoriasis was not a severe impairment at step two, she nonetheless addressed the condition when assessing plaintiff's RFC, acknowledged that plaintiff experienced itching at times, and specifically included a restriction regarding concentrated exposure to humidity and wetness, which was recommended by state agency physician Dr. De La Rosa in light of plaintiff's psoriasis. (AT 331-32.)

Nonetheless, plaintiff argues that the ALJ improperly discounted plaintiff's testimony that his psoriasis covered his entire body, his medication only helped a little bit, he experienced painful and irritating itching, and he had to scratch himself all day (AT 34-35), which plaintiff contends would impair his concentration and ability to interact with others.

In <u>Lingenfelter v. Astrue</u>, 504 F.3d 1028 (9th Cir. 2007), the Ninth Circuit Court of Appeals summarized the ALJ's task with respect to assessing a claimant's credibility:

> To determine whether a claimant's testimony regarding subjective pain or symptoms is credible, an ALJ must engage in a two-step analysis. First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged. The claimant, however, need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom. Thus, the ALJ may not reject subjective symptom testimony . . . simply because there is no showing that the impairment can reasonably produce the degree of symptom alleged.
>
> Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so. . . .

5

Lingenfelter, 504 F.3d at 1035-36 (citations and quotation marks omitted). "At the same time, the ALJ is not required to believe every allegation of disabling pain, or else disability benefits would be available for the asking...." Molina v. Astrue, 674 F.3d 1104, 1112 (9th Cir. 2012).

"The ALJ must specifically identify what testimony is credible and what testimony undermines the claimant's complaints." Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 693 (9th Cir. 2009) (quoting Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)). In weighing a claimant's credibility, an ALJ may consider, among other things, the "'[claimant's] reputation for truthfulness, inconsistencies either in [claimant's] testimony or between [her] testimony and [her] conduct, [claimant's] daily activities, [her] work record, and testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which [claimant] complains.'" Thomas v. Barnhart, 278 F.3d 947, 958-59 (9th Cir. 2002) (modification in original) (quoting Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997)). If the ALJ's credibility finding is supported by substantial evidence in the record, the court "may not engage in second-guessing." Id. at 959.

Here, the ALJ provided specific, clear, and convincing reasons for discounting plaintiff's testimony regarding his symptoms and functional limitations attributable to his psoriasis. In particular, the ALJ reasoned that plaintiff's testimony was inconsistent with the medical evidence and plaintiff's statements to his treating providers, because although he initially failed most conservative treatments, such as topical ointments and oral medications, plaintiff and his physicians reported successful control with Humira injections. (AT 20.) On April 8, 2009, plaintiff reported a flare-up of his psoriasis, but noted that his psoriasis had completely resolved after first starting Humira shots in April 2008. (AT 473.) Plaintiff explained that he had been under the impression that he only had to take two shots and then stop. (Id.) Plaintiff's dermatologist restarted his Humira shots for every other week, and by June 25, 2009, noted 75% improvement, with only a few, shallow, small plaques without scaling remaining. (AT 467,

1  474.) Thereafter, on October 5, 2009, the dermatologist found that plaintiff was 95% clear of all
2  lesions, with only a small plaque without scaling remaining on his right calf. (AT 450.) Plaintiff
3  was "very happy" and only experienced slight occasional itching. (Id.) Subsequently, on January
4  5, 2010, plaintiff was noted to have no lesions, and his dermatologist assessed his condition as
5  "overall excellent, except skin a bit dry." (AT 442-44.) Therefore, the ALJ correctly noted that
6  plaintiff's testimony concerning severe limitations resulting from his psoriasis was inconsistent
7  with the medical evidence and plaintiff's own statements to his treating providers.[4]

8        The record also supports the ALJ's observation that plaintiff's psoriasis appears to
9  be controlled with his Humira injections. See Warre v. Comm'r of Soc. Sec. Admin., 439 F.3d
10 1001, 1006 (9th Cir. 2006) (a condition that can be controlled or corrected by medication is not
11 disabling for purposes of the Act).

12       Accordingly, the undersigned finds that substantial evidence supports the ALJ's
13 findings and analysis with respect to plaintiff's psoriasis.

      2.     Whether the ALJ erroneously determined that plaintiff could perform the reaching requirements of his past relevant work

16       At step four, the ALJ found that plaintiff was capable of performing his past
17 relevant work as a trucking company manager, which the vocational expert testified was a
18 skilled, sedentary job that requires frequent reaching. (AT 21, 39.) Plaintiff argues that the ALJ
19 erroneously determined that plaintiff could return to that past work, because the ALJ also found
20 that plaintiff, who is right handed, was limited to only occasional reaching overhead with his

---

[4] Plaintiff curiously seizes upon the notation by plaintiff's dermatologist in October 2009 that plaintiff was 95% clear of lesions (AT 450), arguing that plaintiff would therefore be distracted for 5% of every hour or for 5% of the workday. (Dkt. No. 15 at 5.) However, this is not a reasonable interpretation of the dermatologist's notation, which referred to the amount of lesions remaining on plaintiff's body and not to any quantified period of time during which plaintiff would be distracted. Because no medical source opined that plaintiff would be distracted for 5% of every hour or for 5% of the workday, such a limitation is not supported by the record evidence and therefore did not need to be included in the RFC. Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (holding that the ALJ "is free to accept or reject restrictions in a hypothetical question that are not supported by substantial evidence").

right upper extremity. (AT 18, 31.) That argument has merit.

In her decision, the ALJ stated: "The vocational expert did testify that claimant's past relevant work would require frequent reaching and although claimant is limited to occasional reaching overhead, that limitation is only with his right arm and does not completely preclude claimant from performing his past relevant work." (AT 22.) However, the vocational expert did not distinguish between various planes or sides of reaching – he merely testified that plaintiff's past work requires frequent reaching. Because the ALJ never sought further clarification from the vocational expert, it is unclear whether the position requires frequent *bilateral overhead* reaching, or whether frequent overhead reaching with only one arm, or perhaps only occasional overhead reaching, would be sufficient to perform the required job functions.

The Commissioner argues that the vocational expert never affirmatively indicated that *bilateral* frequent reaching was necessary, that the trucking company manager position is a sedentary job, and that it "would seem logical that any overhead reaching would necessarily be occasional." (Dkt. No. 16 at 8-9.) This may well be the case, but neither the court, nor the Commissioner's ALJ and appellate counsel, are vocational experts who are competent to make such findings. Given the vocational expert's blanket statement that the position requires frequent reaching, the record is at best undeveloped as to whether this function refers to all or only some planes/sides of reaching. Also, the ALJ's failure to obtain clarification from the VE is not harmless, because the VE's testimony, taken at face value, could suggest that plaintiff cannot do his past work, and the ALJ never proceeded to step five as an alternative.

Furthermore, the Commissioner's contention that the evidence concerning plaintiff's reaching limitations was susceptible to different interpretations, and that the ALJ was thus entitled to use her discretion, is unpersuasive. This is not a case of ambiguous evidence, but instead of failure to properly develop the record. "The ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered ... even

when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003) (citing Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983)).

For these reasons, the undersigned concludes that the matter should be remanded for supplemental vocational expert testimony regarding plaintiff's reaching limitations. This further evidence may yet establish that plaintiff can do his past relevant work. Alternatively, in the event that the ALJ finds, based on such supplemental vocational expert testimony, that plaintiff cannot do his past relevant work, and that it is necessary to proceed to step five of the sequential evaluation process, the ALJ will then have an opportunity to further develop the record as appropriate.

## V. CONCLUSION

For the foregoing reasons, IT IS HEREBY RECOMMENDED that:

1. Plaintiff's motion for summary judgment (Dkt. No. 15) be GRANTED IN PART.

2. The Commissioner's cross-motion for summary judgment (Dkt. No. 16) be DENIED.

3. The matter be remanded for further proceedings pursuant to sentence four of 42 U.S.C. § 405(g).

4. Judgment be entered for plaintiff.

5. The Clerk of Court be directed to close this case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen (14) days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any reply to the objections shall be served on all parties and filed with the court within fourteen (14) days after service of the objections. The parties are advised that failure to file objections within the specified time may

1 waive the right to appeal the District Court's order.  Turner v. Duncan, 158 F.3d 449, 455 (9th
2 Cir. 1998); Martinez v. Ylst, 951 F.2d 1153, 1156-57 (9th Cir. 1991).
3       IT IS SO RECOMMENDED.
4 DATE:  February 14, 2013

                        _____
                        KENDALL J. NEWMAN
                        UNITED STATES MAGISTRATE JUDGE